Filed 2/9/22

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY SCARANO,<br><br>       Defendant and Appellant. | C092538<br><br>(Super. Ct. No. 19FE023236) |

APPEAL from a judgment of the Superior Court of Sacramento County, James E. McFetridge, Judge. Affirmed and remanded.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Supervising Deputy Attorney General, Doris A. Calandra, Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part I of the Discussion.

1

Pursuant to a negotiated agreement approved by the trial court, defendant Anthony Ricardo Scarano was granted five years of supervised probation after he pleaded no contest to possession of a firearm by a felon.  Among the conditions of probation were a search condition, drug treatment programming, and drug testing.  On appeal, defendant contends the trial court erred in denying his motion to suppress evidence.  He further contends his term of probation must be reduced from five years to two in accordance with the recent amendment to Penal Code[1] section 1203.1, enacted while his appeal was pending in Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950).

We conclude defendant's suppression contention was not preserved because he did not renew his motion in the superior court.

As for Assembly Bill 1950, this case presents another situation regarding retroactivity of an ameliorative amendment to a penal statute and the appropriate remedy where the sentence had been imposed pursuant to a plea agreement.  In enacting Assembly Bill 1950, the Legislature was, once again, silent on these matters.  Because the Legislature did not expressly state its intent as to plea agreements in Assembly Bill 1950, the appellate courts are tasked with providing the answer to a question that need not have been asked.[2]  As the split on these retroactivity matters among the districts and on this court indicates, the answer is not an easy one.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  These issues need not be addressed by appellate litigation if the Legislature expressly states whether the sentencing reforms it enacts are to be given retroactive application on appeal or not, and if so, whether retroactive application applies to negotiated sentences or not.  We echo the majority in *People v. Griffin* (2020) 57 Cal.App.5th 1088 (*Griffin*), review granted February 17, 2021, S266521, and "urge the Legislature to clarify its intent on how its differing sentencing reform measures should be applied."  (*Id*. at p. 1099, fn. 7.)

We agree with the parties that Assembly Bill 1950 applies retroactively, but disagree with defendant that the appropriate remedy is for this court to order that his supervised probation term be reduced to two years. Rather, this matter must be remanded to allow the trial court and the prosecution the opportunity to withdraw from the original plea agreement.

Courts addressing the question of remedy for ameliorative amendments have focused primarily on the prosecution's ability to withdraw consent versus the defendant receiving the benefit of the statutory change. But we must also consider the role of the trial court in the context of plea bargaining. When a trial court accepts a negotiated resolution to a case and imposes the sentence agreed upon by the parties, it exercises discretion. In that exercise of discretion, a trial court must consider whether the proposed resolution is, " 'in furtherance of the interests of society.' " (*People v. Stamps* (2020) 9 Cal.5th 685, 706 (*Stamps*).) In making defendant's term of probation five years with a search condition, drug treatment programming, and drug testing, the trial court here impliedly concluded that five years of supervised probation with those conditions for the entire duration of probation furthered the interests of society. Defendant asks us to effectively resentence him, depriving the trial court of its discretion in determining whether the reduced term of probation is still in the interests of society in the locality where the court sits. We decline to do so.

We conclude remand for resentencing is required to allow the trial court to determine whether the reduced term of probation, given the totality of the circumstances relevant to sentencing (some of which may be unknown to us), is in furtherance of the interests of society or not. If the trial court concludes it is not, then in the exercise of its discretion, the court may withdraw its approval of the plea agreement. If, on the other hand, it determines that a term of two years of probation is consistent with the interests of society, then the prosecution should have the opportunity to withdraw its consent from the previously negotiated agreement. If either withdraws consent, the parties must be

3

restored to the status quo ante with all counts and allegations implicated by the plea agreement reinstated.

We affirm the conviction but remand the matter back to the trial court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

During the execution of a search warrant, officers found in defendant's home a loaded firearm and ammunition, two explosive devices, a checkbook stolen in a residential robbery, a fictitious check, a false identification with defendant's photograph, a bag of unopened mail addressed to multiple residents of the City of Elk Grove, 3.84 grams of methamphetamine, and drug paraphernalia.[3] Two keys for cluster mailboxes were also found.

The prosecution charged defendant with six felony counts, including possession of a firearm by a felon (§ 29800), and three misdemeanors.[4] The People also alleged defendant was previously convicted of a strike offense, a 2008 conviction for assault with

---

[3] The search warrant was based on information from a confidential informant who reported defendant was selling methamphetamine and firearms, buttressed by the following: Law enforcement surveillance of defendant's home during which a known drug trafficker visited; a text message where defendant offered to sell another person heroin; defendant's recent arrest for possession of 8.16 grams of heroin (81 doses); and the law enforcement experience of the affiant leading him to believe, based on the totality of the circumstances, that defendant was selling drugs out of his home.

[4] The complaint alleged the following felonies: Felon in possession of a firearm (§ 29800, subd. (a)(1), count one); felon in possession of ammunition (§ 30305, subd. (a)(1), count two); possession of destructive devices (§ 18715, subd. (a)(1), counts three & four); possession of a forged identification document (§ 470b, count five); and possession of heroin for sale (Health & Saf. Code, § 11351, count six). The complaint further alleged the following misdemeanors: Receipt of stolen property (§ 496, subd. (a), count seven); mail theft (§ 530.5, subd. (e), count eight); and shoplifting (§ 459.5, subd. (a), count nine). And it was alleged defendant sustained a prior strike conviction and that defendant was ineligible for local imprisonment pursuant to section 1170, subdivision (h)(3) based on a prior serious felony conviction.

4

a deadly weapon with the infliction of great bodily injury. (§§ 245, subd. (a)(1), 12022.7.)

Prior to a preliminary hearing defendant filed a section 1538.5 motion to quash the warrant and suppress the evidence found at his home, which the magistrate denied.[5]

Thereafter, the parties agreed to a resolution of all of the charges. Under the terms of the agreement, defendant would plead to count one if he prevailed on his *Romero*[6] motion to dismiss the prior strike conviction allegation. Before the *Romero* hearing, the parties had been discussing a plea agreement. On the record, defense counsel told the court the defense had counteroffered with two alternatives: "[W]e have counter-offered to the People both 16-month state prison prior to this hearing and also probation with time served. [¶] It would be our preference that the People try to see if they can do time served because then [defendant] can be placed on probation immediately and be *searchable for five years which would be far more than he would get if he were to go to prison on this case in terms of searchability and supervision.*" (Italics added.)

Later, just before the *Romero* hearing, defense counsel told the court that defendant was prepared to resolve the case for a plea to a single count, count one, and the prosecution's offer of probation and 364 days in jail. Counsel argued that since the prisons were not transporting due to the COVID-19 pandemic, defendant would likely end up doing all of his time locally, "and *I think the best thing for the community and for [defendant] is to be under the supervision of probation for five years.*" (Italics added.) Counsel added that the prosecution would not ask for a prison sentence if the *Romero*

---

[5] The section 1538.5 matter was submitted on the warrant, warrant affidavit, police reports associated with the search warrant that were attached to defendant's motion, defendant's written motion, the prosecution's written opposition, and the oral arguments of counsel.

[6] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

motion was granted.  The parties agreed that defendant's maximum exposure before the court's ruling on the *Romero* motion was 23 years two months.

Thereafter, the court granted defendant's *Romero* motion, noting among other things that defendant suffered from drug addiction and was willing to participate in a rehabilitation program if placed on probation.  Defendant then accepted the People's offer made prior to the *Romero* ruling but contingent upon that ruling and pleaded no contest to count one—felon in possession of a firearm.[7]  In exchange for his plea, the remaining charges were dismissed, some with a *Harvey*[8] waiver.  The trial court suspended imposition of sentence and placed defendant on five years of formal probation with one year in the county jail and credit for time served.  Among the conditions of probation the court imposed were a search condition and the requirements that defendant participate in a drug rehabilitation program "under the direction of the Probation Officer" and drug testing.

## DISCUSSION

### I.  Motion to Suppress

Defendant contends that the magistrate erred in denying his motion to suppress because the warrant to search his home was purportedly obtained without probable cause. The People contend this claim is barred because defendant failed to renew his motion before the trial court.  We agree.

To preserve a challenge to a magistrate's denial of a section 1538.5 motion when a defendant has pleaded guilty or no contest, the defendant must first renew the motion in the superior court.  (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896 (*Lilienthal*).)

---

[7] Defendant waived a presentence report.

[8] *People v. Harvey* (1979) 25 Cal.3d 754.

6

In *Lilienthal*, the defendant moved to suppress evidence at his preliminary hearing that was obtained from a traffic stop following a warrantless search by the police. (*Lilienthal, supra*, 22 Cal.3d at p. 895.) Following the denial of his suppression motion, the defendant pleaded guilty to one drug offense, the remaining charges were dismissed, and the court sentenced the defendant to probation. (*Ibid.*) The defendant appealed from his judgment of conviction and sought review on his search and seizure motion only. (*Ibid.*) The *Lilienthal* court held that a defendant does not satisfy the requirements of section 1538.5 simply by moving to suppress evidence before a magistrate, because "it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention." (*Lilienthal,* at p. 896, fn. omitted.) As this court has explained, " '[m]agistrates presiding at preliminary hearings do not sit as judges of courts, and exercise none of the powers of judges in court proceedings.' " (*People v. Richardson* (2007) 156 Cal.App.4th 574, 584 (*Richardson*).) "Only if the defendant raised the search and seizure issue *in the superior court*—i.e., at some point *after* the preliminary proceedings before the magistrate—could the defendant be deemed to have raised that issue 'at some stage of the proceedings prior to conviction' as required for appellate review of the issue under section 1538.5 [subdivision] (m)." (*Id.* at pp. 584-585.) The requirement to make the motion in the superior court after it has been denied by a magistrate is well-settled. (*People v. Garrido* (2005) 127 Cal.App.4th 359, 364; *People v. Hoffman* (2001) 88 Cal.App.4th 1, 3; *People v. Hart* (1999) 74 Cal.App.4th 479, 485.)

Here, defendant accepted the People's offer of a plea agreement having never advanced beyond the "preliminary proceedings before the magistrate." (See *Richardson, supra*, 156 Cal.App.4th at pp. 584-585.) Thus, we conclude that *Lilienthal* applies and defendant forfeited his right to appellate review of the search and seizure matter when he did not renew his motion to suppress in the superior court.

7

## II.  Assembly Bill 1950

While this appeal was pending Assembly Bill 1950 took effect.  With exceptions not applicable here, it changes the maximum length of probation for felony cases to two years.  (§ 1203.1, subd. (a).)[9]  Applying *In re Estrada* (1965) 63 Cal.2d 740, the parties agree that Assembly Bill 1950 applies retroactively to defendant.  We do too.  (*People v. Lord* (2021) 64 Cal.App.5th 241, 246; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964.)  But, as in other cases involving ameliorative amendments, the parties here disagree on the remedy.

Defendant asks this court to reduce his term of probation to two years.  Relying on the remedy explained in *Stamps, supra,* 9 Cal.5th 685, the People seek remand and the opportunity to void the plea agreement, so "the parties are returned to status quo ante and [defendant's] prosecution reinstated."  (See *Stamps,* at p. 692.)  We agree with the People.

## A.  The *Stamps* Remedy

In *Stamps*, *supra*, 9 Cal.5th 685, the defendant pleaded no contest to first degree burglary and, pursuant to a plea agreement, was sentenced to nine years, including a five-year prior serious felony enhancement (§ 667, subd. (a)(1)).  (*Stamps,* at p. 693.)  Two remaining first degree burglary counts, a strike allegation, and three prior prison commitment enhancements were dismissed.  (*Ibid*.)  While the appeal was pending, Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393) took effect, affording trial courts discretion to dismiss prior serious felony enhancements in the interests of justice under section 1385.  (*Stamps,* at p. 693.)  The defendant argued that, under

---

[9]  Section 1203.1, subdivision (a) provides in pertinent part:  "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time *not exceeding two years*, and upon those terms and conditions as it shall determine."  (Italics added.)

*Estrada*, Senate Bill 1393 should be applied retroactively, entitling him to remand so the trial court could consider striking or dismissing his serious felony enhancement while the rest of the plea agreement remained intact. (*Stamps,* at p. 693.)

The *Stamps* court agreed that Senate Bill 1393 applied retroactively, but rejected the defendant's proposed remedy. (*Stamps, supra*, 9 Cal.5th at pp. 699, 700.) Our high court explained that under section 1192.5, the trial court cannot unilaterally modify the agreement by dismissing portions of the agreed sentence; rather, any modification requires both parties' consent. (*Stamps,* at p. 701.)[10] The court held this "long-standing law" could not be circumvented absent legislative intent to do so. (*Stamps,* at p. 701.) And the court stated, "in order to receive the remedy he seeks," it was up to defendant to demonstrate this legislative intent. The court stated: "In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, *defendant must establish* not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, *the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385*." (*Ibid.,* italics added.) The *Stamps* court concluded the Legislature had not intended that result. (*Ibid.*)

---

[10] Section 1192.5 provides in pertinent part: "When the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw the plea if the defendant desires to do so. . . . [¶] If the plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter the plea or pleas as would otherwise have been available."

9

In so concluding, the *Stamps* court distinguished *Harris v. Superior Court* (2016) 1 Cal.5th 984, which found the electorate intended to apply the ameliorative benefit of Proposition 47 to parties to a plea agreement. (*Stamps, supra*, 9 Cal.5th at pp. 702-703.) The *Stamps* court explained that Proposition 47, "specifically applied to a person 'serving a sentence for a conviction, *whether by trial or plea*,' " and " '[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants.' " (*Stamps,* at pp. 702-703, italics added, quoting *Harris,* at p. 991.) By contrast, "[n]othing in the language and legislative history of Senate Bill 1393 suggests an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties. . . . That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Stamps,* at p. 704.) Accordingly, the *Stamps* court held the trial court cannot simply dismiss the prior serious felony offense, leaving the remainder of the bargain intact. (*Id*. at p. 707.) Instead, if the trial court indicates its intent to exercise its authority under section 1385, the prosecution must be afforded the opportunity to withdraw from the agreement. (*Stamps,* at p. 707.)

## B. Application of the *Stamps* Remedy

After Senate Bill 1393, the Legislature enacted other ameliorative amendments: Senate Bill No. 180 (2017-2018 Reg. Sess.) (Senate Bill 180), eliminating prior drug trafficking conviction enhancements for most defendants; Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), eliminating prior prison commitment enhancements for most defendants; and now Assembly Bill 1950, reducing the period of probation to a maximum of two years for felonies. While these have been held to apply retroactively

under *Estrada*, a split of authority has emerged as to whether the *Stamps* remedy applies to them.[11]

The Fifth District applied the *Stamps* remedy in a pending appeal involving Senate Bill 136 in *People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted January 27, 2021, S265739 (*Hernandez*), and transferred back to the Court of Appeal December 22, 2021.[12] The *Hernandez* court originally remanded the matter back to the trial court to dismiss the prior prison term enhancements, allowing the prosecution the option to withdraw from the plea agreement, and the trial court the option to withdraw its approval of the agreement. (*Id*. at pp. 944, 960.)[13] The court observed: "The crux of the [*Stamps*]

---

[11] As for the enhancements eliminated in Senate Bill 136 and 180, the Legislature recently enacted Senate Bill No. 483 (2020-2021 Reg. Sess.), effective January 1, 2022. In this bill, the Legislature enacted sections 1171 and 1171.1. In subdivision (a) of sections 1171 and 1171.1, the Legislature declared prior drug trafficking conviction enhancements and prior prison commitment enhancements "legally invalid." The bill also calls for trial courts to recall these sentences and resentence defendants upon notification by the Secretary of the Department of Corrections and Rehabilitation pursuant to a statutorily proscribed schedule. (§§ 1171, subds. (b) & (c), 1171.1, subds. (b) & (c).) Imposition of a lesser sentence is required unless the court finds by clear and convincing evidence a lesser sentence would endanger public safety. (§§ 1171, subd. (d)(1), 1171.1, subd. (d)(1).) No similar provision was enacted for the reduction of terms of probation. Such a provision would have eliminated the issues we and other appellate courts are required to resolve as to Assembly Bill 1950.

[12] The Supreme Court's transfer order reads as follows: "The above-captioned matter is transferred to the Court of Appeal, Fifth Appellate District, with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 483 (Stats. 2021, ch. 728). The Court of Appeal's opinion has no binding or precedential effect, and *may be cited for potentially persuasive value only*. [Citation.]" (Italics added.) We find the reasoning in *Hernandez* to be persuasive in many respects. Accordingly, we cite and discuss *Hernandez* herein for its persuasive value.

[13] The Supreme Court's transfer order reads as follows: "The above-captioned matter is transferred to the Court of Appeal, Fifth Appellate District, with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 483 (Stats. 2021, ch. 728). The Court of Appeal's opinion has no binding or precedential effect, and *may be cited for*

11

case was that the trial court could dismiss the enhancement while leaving the plea agreement intact only if 'the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385.' " (*Id.* at p. 953.) The *Hernandez* court rejected the defendant's argument that *Stamps* is distinguishable because the amendment there afforded the trial court discretion to reduce the sentence whereas under Senate Bill 136 dismissal is mandatory. (*Hernandez,* at pp. 947, 957.) It reasoned: "Such a distinction is not the dispositive issue in this case. Instead, both *Stamps* and *Harris* focused on the history of the amendments to determine whether there was any intent to 'to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification . . . .' " (*Id.* at p. 957.) The court found no evidence the Legislature intended to allow modification of plea agreements in Senate Bill 136. (*Hernandez,* at p. 960.)

The *Hernandez* court partially relied upon *People v. Barton* (2020) 52 Cal.App.5th 1145 (*Barton*),[14] which addressed retroactive application of Senate Bill 180 to a plea-bargained sentence. (*Hernandez, supra*, 55 Cal.App.5th at pp. 955-956, 958-959, review granted.) Concluding that Senate Bill 180 made the plea agreement in that case unenforceable, the *Barton* court reasoned that since the Legislature had not expressed any intention to override section 1192.5, the *Stamps* remedy applied. (*Barton,* at p. 1150; *id.* at p. 1159 ["The fact Senate Bill 180 'is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases' involving prior conviction enhancements under former section 11370.2"].) The *Barton* court remanded for resentencing, expressly noting that

*potentially persuasive value only*. [Citation.]" (Italics added.) We find the reasoning in *Hernandez* to be persuasive in many respects. Accordingly, we cite and discuss *Hernandez* herein for its persuasive value.

[14] Review in *Barton* was neither granted nor denied. Thus, we assume the defendant in *Barton* did not seek review.

upon dismissal of the enhancement, the parties must be restored to the status quo ante. (*Id*. at p. 1159.)  It added, "[t]he parties may then enter into a new plea agreement, which will be subject to the trial court's approval, or they may proceed to trial on the reinstated charges."  (*Ibid*.)

Other courts have followed the *Barton*/*Hernandez* approach to the ameliorative amendment eliminating the prior prison commitment enhancement.  (See *People v. Ruggerio* (2021) 65 Cal.App.5th 1126, 1129 (*Ruggerio*) (Division Six, Second District) ["Nothing in the legislative history of Senate Bill 136 suggests that the Legislature intended that the bill permit defendants to ' " 'whittle down [their] sentence[s] "but otherwise leave [their] plea bargain[s] intact" ' " ' "]; *People v. Houle* (2021) 64 Cal.App.5th 395, 397, review granted July 28, 2021, S269337 (Division Three, First District); *People v. Joaquin* (2020) 58 Cal.App.5th 173, 179, review granted Feb. 24, 2021, S266594 (Division Five, First District); *Griffin, supra*, 57 Cal.App.5th at pp. 1093-1096, review granted (Division Five, First District).)  We agree with these courts that the appropriate remedy is the one set forth in *Stamps*.

### C.  Trial Court Discretion to Withdraw Consent to Negotiated Sentences

Beyond the reasoning in *Barton* and *Hernandez*, we conclude that the trial court's sentencing discretion and discretion to withdraw its consent from a plea agreement (unless limited by the Legislature) are separate reasons for applying the *Stamps* remedy. In Assembly Bill 1950, the Legislature displayed no intent to change the component of section 1192.5 that gives trial courts the authority to withdraw consent from plea agreements.  This judicial authority is also long-standing law.

Section 1192.5—the very provision the *Stamps* court relied upon in establishing its remedy—gives the trial court discretion to withdraw consent from a plea agreement.  The *Stamps* court was careful to point this out.  (See *Stamps, supra*, 9 Cal.5th at p. 706

13

["courts have broad discretion to withdraw their approval of negotiated pleas"].)[15] Indeed, "[t]he court's authority to withdraw its approval of a plea agreement has been described as 'near-plenary.' " (*Id.* at p. 708, citing *People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 595; *People v. Stringham* (1988) 206 Cal.App.3d 184, 195.) As we have previously noted, and as the *Stamps* court has acknowledged, " '[g]enerally, a trial court may exercise its discretion to withdraw approval of a plea bargain because: (1) it believes the agreement is "unfair" [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after further consideration, *the court concludes that the agreement is* " ' "*not in the best interests of society*" ' " [citation].' " (*Stamps,* at p. 706, italics added, quoting *Mora-Duran,* at pp. 595-596.)

This discretion to approve agreements, and if appropriate withdraw consent, is critical to the administration of justice. As our high court has explained, "the process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant *and approved by the court*.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929-930, italics added.) And as the court in *Stamps* noted: " 'In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision *in furtherance of the interests of society . . . .*' " (*Stamps, supra*, 9 Cal.5th at p. 706, italics

---

[15] See, also *Stamps, supra*, 9 Cal.5th at page 701, quoting *People v. Kim* (2011) 193 Cal.App.4th 1355, 1361 [" 'Some potential for confusion appears in broad statements to the effect that once a trial court has "accepted" a plea bargain, it too is "bound" by it. . . . Taken out of context, they might suggest that the court surrenders its sentencing discretion the moment it accepts a negotiated plea. Such a view is of course irreconcilable with the statute and cases' "].

added.)  Thus, every time a trial court approves a negotiated sentence, it impliedly determines the agreement is in furtherance of the interests of society in the locale where that court sits.

As for a sentence of probation, it "is an act of grace or clemency" granted by the trial court.  (*People v. Moran* (2016) 1 Cal.5th 398, 402 (*Moran*).)  Trial courts have discretion whether to grant probation.  The decision to grant probation to a defendant as part of a plea bargain, the decision as to whether probation is "in furtherance of the interests of society" as to that particular defendant, and the decision to maintain or withdraw consent to a plea bargain on remand are discretionary decisions.  Thus, judicial discretion is implicated here just as it is when a court determines whether it is in "the furtherance of justice" to strike or dismiss a prior serious felony conviction on remand under section 1385 as the Legislature authorized in Senate Bill 1393.

Even though defendant has not shown anything in Assembly Bill 1950 or its legislative history suggesting legislative intent to deprive trial courts of the discretion to withdraw consent to an agreement they had approved and instead require appellate courts to impose a new sentence without remanding for resentencing, defendant asks us to skip remand and simply order that the term of his probation be reduced.  Were we to do that, defendant would have effectively whittled down his sentence without allowing the trial court to determine whether the reduced sentence furthers the interests of society.

Such whittling should be avoided particularly in the case of a grant of probation where important conditions of probation were ordered to be in effect during the entire duration of probation.  In granting probation, trial courts have "broad discretion to impose conditions *to foster rehabilitation and to protect public safety*."  (*Moran, supra*, 1 Cal.5th at p. 403, italics added.)  Here, the trial court imposed a search condition and requirements of drug programming and drug testing, contemplating that these conditions would be in force for five years.  This implies a finding that those conditions for that duration would foster defendant's rehabilitation and protect society and thereby make this

specific grant of probation in the interests of society.  Indeed, defense counsel appears to have sold the negotiated resolution in this case to the court, and apparently to the prosecution, based on the duration of probation and the search condition, stating that if the court were to impose a local sentence with probation, defendant would "be *searchable for five years which would be far more than he would get if he were to go to prison on this case in terms of searchability and supervision*."  (Italics added.)  Counsel later returned to this point, emphasizing, "*I think the best thing for the community and for [defendant] is to be under the supervision of probation for five years*."  Apart from whether the prosecution would have consented to probation for two years, the trial court may well have rejected that sentence as not in furtherance of the interests of society based on the belief that the shorter duration would have been insufficient to rehabilitate this particular defendant or protect society.  And it may arrive at the same conclusion on remand.[16]

### D.  Courts that Reject the *Stamps* Remedy

We are mindful that some courts have declined to apply the *Stamps* remedy.  We disagree with the approach advanced by these courts as we shall explain.

In *People v. France* (2020) 58 Cal.App.5th 714, review granted February 24, 2021, S266771, a majority of a panel in Division Four of the First District concluded the defendant was entitled to the benefit of Senate Bill 136, without the need for remand. (*France,* at pp. 718, 727-730.)  The majority acknowledged that nothing in Senate Bill 136 addressed plea bargains, but reasoned that while the *Stamps* court found the absence of such provisions " 'undercuts' " the notion that the Legislature intended to alter the long-standing bar on a trial court's ability to unilaterally modify negotiated sentences, the lack of such legislative language was not dispositive.  (*France,* at pp. 727-728.)  The

---

[16] Our opinion is not intended to signal to the trial court how it should exercise its discretion on remand.

majority placed "greater importance" on the difference between Senate Bill 1393 and Senate Bill 136, reasoning that "[p]reventing Senate Bill 136 from applying to plea-bargained sentences would thwart or delay the full achievement of the Legislature's intent to reduce the expense and ineffectiveness of enhanced prison sentences based on prior prison terms, especially given that pleas of guilty or no contest 'represent the vast majority of felony and misdemeanor dispositions in criminal cases.' " (*Id*. at p. 728.) Acknowledging that the same could be said of Senate Bill 1393, the *France* majority distinguished Senate Bill 1393 because through it, the Legislature sought to reduce sentences indirectly by giving courts the discretion to strike enhancements. (*France,* at p. 728.) Thus, the prohibition on a trial court's ability to unilaterally modify a plea-bargained sentence was implicated. (*Ibid*.) But according to the *France* majority, under Senate Bill 136, the defendant's existing sentence was illegal, and striking the enhancement is therefore mandatory, not discretionary. (*France*, at p. 729.) The *France* majority reasoned that because "Senate Bill 136 has a direct and conclusive effect on the legality of existing sentences . . . rather than merely giving trial courts discretion to modify sentences . . . , it stands closer to Proposition 47 and *Harris*, despite the absence of an express resentencing provision." (*Ibid*.) It further reasoned that under the *Hernandez* approach, any retroactive ameliorative change in a criminal law that does not contain an express reference to plea-bargained sentences would entitle the prosecution to reopen the plea bargain to add back previously dismissed charges or allegations, which would "create a rule that defendants who plead guilty may benefit from the retroactive operation of any law whose retroactivity depends on the *Estrada* presumption only if the prosecution assents." (*Id.* at p. 730.) Such an approach, according to the *France* majority, "would drastically undermine the *Estrada* principle that the Legislature intends a lighter penalty to apply 'to every case to which it constitutionally could apply.' " (*Ibid*.)

17

Similarly, in *People v. Andahl* (2021) 62 Cal.App.5th 203 (*Andahl*), review granted June 16, 2021, S268336, a different panel of this court followed the *France* majority and concluded that it was required to strike the prior prison commitment enhancements imposed as part of a negotiated sentence. (*Id*. at pp. 206, 215.) It agreed with the *France* majority, stating: "retroactive application of the Legislature's *decision* to invalidate a one-year sentence enhancement does not involve any unilateral action by the trial court." (*Id*. at p. 214, italics added.) The *Andahl* court added: "the Legislature itself has decided that a one-year enhancement not based upon a prior conviction for a sexually violent offense must be stricken. *The identity of the decision maker* is dispositive since, as *Stamps* recognizes, the Legislature ' "may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement," ' even as the trial court may not bind the People unilaterally. [Citations.] When a case is remanded under Senate Bill 1393, the trial court can choose not to strike the enhancement and preserve the plea agreement, but a trial court applying Senate Bill 136 has no such option because an enhancement 'cannot stand . . . when it rests upon conduct that is no longer sanctioned.' " (*Id*. at pp. 214-215, italics added.)

Finally, in *People v. Stewart* (2021) 62 Cal.App.5th 1065, review granted June 30, 2021, S268787 (*Stewart*), Division Two of the First District rejected the application of *Stamps* to Assembly Bill 1950, which took effect during the pendency of that appeal. (*Stewart,* at pp. 1068, 1070.) Applying the *France* approach, the *Stewart* court distinguished *Stamps* on the grounds that Senate Bill 1393 gave courts discretion to strike the enhancement and thus the prohibition on a trial court's ability to unilaterally modify a negotiated sentence was directly implicated. (*Stewart,* at pp. 1075, 1077.) It reasoned that "*Stamps* . . . had no occasion to consider the effect on a plea bargain of retroactive application of a law through which the Legislature directly affected a plea bargain by rendering one of its terms invalid. Where the ameliorative change in law is mandatory, the question is not whether the Legislature intended to allow the trial court to alter the

18

terms of a plea bargain but whether the Legislature intended to, in effect, do so directly."
(*Id*. at p. 1077.)  Further, Assembly Bill 1950, like Senate Bill 136, " 'does not involve *Stamps*'s repeated and carefully phrased concern with the "long-standing law that a *court* cannot *unilaterally* modify an agreed-upon term by striking portions of it under section 1385." ' "  Instead, according to the court in *Stewart*, Assembly Bill 1950 " 'has a direct and conclusive effect on the legality of existing sentences pursuant to *Estrada*.' " (*Stewart,* at p. 1078.)

We disagree with the approach advanced in these cases.  The *France* majority inferred an intent to apply Senate Bill 136 to plea-bargained sentences from the legislative purposes of that measure.  But as the *France* majority acknowledged, the Legislature's intent was to "reduce the expense and ineffectiveness of *enhanced prison sentences* based on prior prison terms." (*France, supra*, 58 Cal.App.5th at p. 728, review granted, italics added.)  Thus, it was plainly the one-year enhancement sentence the Legislature sought to eliminate in effectuating its legislative purpose.  The Legislature did not, however, eliminate or reduce sentences related to other offenses and enhancements that remain legally valid in any particular case, but which may not have been imposed or may have been dismissed as part of the original agreed-upon sentence.  And without an expression of the intent to cover plea-bargained sentences either in the ameliorative amendment or its legislative history, it is speculative to read such an intent into Senate Bill 136.  Consequently, we do not agree that the Legislature intended to modify the terms of plea agreements "directly" in Senate Bill 136.  The only thing the Legislature sought to do directly is what it did:  eliminate the one-year prior prison commitment enhancement for most defendants.

We find it equally speculative to read into Assembly Bill 1950 from its purposes an intent to reach plea-bargained sentences when a viable sentence other than probation could have been imposed on the offense for which the defendant was sentenced and could be imposed on remand if the trial court concludes a two-year probationary sentence is not

19

in the interests of society.[17]  If the Legislature's intent is to reach probationary sentences that are the product of a plea agreement and take other alternative sentences off the table, the Legislature need only say so.  (See fn. 11, *ante*.)

As noted, the *France* majority reasoned that the *Hernandez* approach "would drastically undermine the *Estrada* principle that the Legislature intends a lighter penalty to apply 'to every case to which it constitutionally could apply.' " (*France, supra*, 58 Cal.App.5th at p. 730, review granted; see also *Andahl*, *supra*, 62 Cal.App.5th at p. 213, review granted ["Such a result cannot be squared with the *Estrada* directive that a 'lighter penalty' should be imposed whenever 'it constitutionally could apply' "].)  But again, this misperceives the legislative intent.  In these ameliorative statutes, that intent is focused solely on the sentence reduced or eliminated in the amendment, not other viable charges, enhancements, or their associated sentences.  Accordingly, *Estrada* should not be read to reach such sentences.  When the *Estrada* court spoke of a "lighter penalty," it spoke only of the penalty related to the specific sentence amended by the ameliorative statute.  It did not address a situation where the court had a choice of other potential sentences for that charge, e.g., a local or state prison sentence instead of granting probation.  And it had no occasion to address the sentence that could be imposed on remand as to other viable

---

[17] Courts have recognized that in enacting Assembly Bill 1950, the Legislature addressed the following concerns:  "[T]he social and financial costs of the existing probation system—in particular, with probation as ' "a pipeline for re-entry into the carceral system" ' due to the large number of people incarcerated for violations of probation, most of which are ' " 'technical' and minor in nature" ' " and that "the rehabilitative purpose of probation could best be met, and deleterious effects of the probation system minimized, by shortening the maximum duration of probation." (See, e.g., *Stewart*, *supra*, 62 Cal.App.5th at pp. 1073-1074, review granted.)  But this legislative purpose does not speak to alternative sentences that could have been imposed for an offense or offenses to which a defendant pleaded.  Nor did the Legislature suggest this purpose relates to sentences for legally valid offenses or enhancements that have been dismissed as part of a plea agreement and which, in a court's discretion could be imposed, after the parties are returned to the status quo ante.

charges when the parties have been restored to the status quo ante. As the *Stamps* court noted, "*Estrada*[] says nothing about the proper remedy should we conclude a law retroactively applies." (*Stamps*, *supra*, 9 Cal.5th at p. 705; see also *Barton*, *supra*, 52 Cal.App.5th at p. 1155 ["Neither *Estrada* nor [the ameliorative amendment] dictate the appropriate remedy"].) *Estrada* applies to sentences for which the Legislature has made an ameliorative change; it does not apply to potential sentences that may be imposed on remand for which there has been no legislative change.

Additionally, *France*, *Andahl*, and *Stewart* do not consider the impact of the *France* majority's approach on the trial court's sentencing discretion and authority under section 1192.5 to approve of agreements and withdraw consent. Indeed, *Andahl* sees the Legislature as the "decision maker" as to the defendant's sentence, not the trial court. (*Andahl*, *supra*, 62 Cal.App.5th at p. 214, review granted.) But in enacting the ameliorative amendment, the Legislature did not *decide* what Andahl's sentence or any one defendant's sentence should be. It decided only that the one-year prior prison commitment enhancement should no longer be part of the sentence. Similarly, here, the Legislature merely decided that *if* the trial court grants probation, it can be for no more than two years. The trial court remains the decisionmaker as to any particular defendant's sentence.

Further, the *France* majority, *Andahl*, *Stewart*, and the dissent here all rely on *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*). But our high court in *Doe* was never called upon to address a trial court's discretion to withdraw from a plea agreement. In *Doe*, the California Supreme Court answered a question directed to it by the Ninth Circuit Court of Appeal, pertaining to litigation commenced by Doe in which he sought to avoid the public disclosure of his sex offender registration required by the Megan's Law amendments to California's sex offender registration laws. These amendments were enacted after Doe was sentenced. (*Doe, supra*, 57 Cal.4th at pp. 66-67.) Doe asserted the change in the law violated his plea agreement. (*Ibid*.) Our high court understood the

Ninth Circuit's question as: "Under California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement *bind the parties* or can the terms of a plea agreement be affected by changes in the law?" (*Id.* at p. 66, italics added.) The court answered: "We respond that the general rule in California is that the plea agreement will be ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . ." ' [Citation.] *That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them*." (*Ibid.*, italics added.)

As the above italicized text makes clear, *Doe* was focused on the rights of the parties to a plea agreement. The question asked of and answered by the *Doe* court had nothing to do with a trial court's discretion to withdraw consent from a plea agreement. Thus, *Doe* did not speak to a trial court's authority to withdraw consent from a plea agreement if it determines the agreement, modified by the legislative change, is not in the interests of society. Reliance on *Doe* ignores that trial courts retain discretion to withdraw from plea agreements—at least when the Legislature fails to expressly say otherwise in the ameliorative amendment.

And to be sure, nothing in Assembly Bill 1950 suggests the Legislature intended to retroactively strip the sentencing court of its sentencing discretion or prevent the court from considering whether a sentence as to a particular defendant, modified by the legislative change, remains in the interests of society. In the absence of such a provision

22

in the ameliorative amendment or some indication in the legislative history, the trial court must still approve of the agreement as modified.[18]

## E. Remedy

This case should be remanded for resentencing. At that time, the trial court may or may not conclude that the plea agreement, sans three years of supervised probation with a search condition, drug rehabilitation programming, and drug testing is in the interests of society. Because the Legislature has not indicated otherwise, the trial court maintains the discretion to make this decision. If the court does not withdraw its consent, it must give the prosecution the opportunity to withdraw from the plea agreement. Should the court or prosecution withdraw consent, the trial court must " ' "restore the parties to the status quo ante." ' " (*Stamps*, *supra*, 9 Cal.5th at pp. 706-707.) In this

---

[18] The dissent also asserts the following based on the quoted excerpt from *Doe, supra*, 57 Cal.4th at page 66: "Given the general rule in California that the plea agreement will be ' " 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy,' " ' [citation] it would seem that the amendment here should presumptively apply to all sentences whether the product of a litigated outcome or a plea agreement." (Dis. opn., *post*, p. 2.) But this seems inconsistent with *Stamps*, which noted that the rule in *Doe* stated the parties are not insulated from " ' "changes in the law that *the Legislature has intended to apply to them*." ' " (*Stamps, supra*, 9 Cal.5th at pp. 702-703.) It was based on this that the *Stamps* court turned to the question of whether the Legislature intended the change in the law to apply to the parties there as it had determined the electorate did in *Harris* relative to Proposition 47. (*Stamps,* at p. 703.) Moreover, as to the question of remedy, as we have noted, the *Stamps* court put the burden on the defendant to establish the Legislature's intent: "*defendant must establish* not only that [the ameliorative amendment] applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id*. at p. 701, italics added.) The same applies here: *defendant must establish* not only that the ameliorative amendment applies retroactively, but that, in enacting the amendment, the Legislature intended to overturn long-standing law related to section 1192.5, including the trial court's discretion to withdraw its consent to the plea agreement.

context, "ante" must mean before the plea, meaning the dismissed counts and possibly the strike allegation would be restored.[19]

### F. Sentencing Cap

One last question remains: Must there be a sentencing cap to a sentence imposed on remand after the prosecution or the court withdraws consent to the original agreement? Some of the cases applying the *Stamps* remedy have answered yes as to renegotiated sentences, based on *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*). (See *Ruggerio, supra*, 65 Cal.App.5th at pp. 1129-1130; *People v. Joaquin, supra*, 58 Cal.App.5th at p. 178, review granted; *Griffin, supra*, 57 Cal.App.5th at p. 1097, review granted.)[20] We, however, disagree with these courts, and instead agree with the reasoning in *Hernandez, supra*, 55 Cal.App.5th 942, review granted.

In *Collins*, the Legislature decriminalized the lone offense to which the defendant had earlier pleaded in exchange for the dismissal of numerous other counts that remained viable. Our high court held that remand was appropriate to allow the prosecution to proceed on those other counts but capped the defendant's sentencing exposure to the length of the sentence he originally agreed to, noting that to simply dismiss the case

---

[19] Based on the facts we summarized *ante*, it appears that the duration of probation may have been an integral part of the court's determination in granting the *Romero* motion. If on remand, the trial court clarifies that its determination on the *Romero* motion was separate from the negotiated agreement or the prospect of a five-year grant of probation, it need not restore the strike conviction allegation.

[20] Two of these courts have said their opinions should not read to apply to situations where the parties fail to reach a new agreement and the defendant is convicted at trial. The *Griffin* court wrote: " 'We do not address a situation where the parties fail to enter into a new plea agreement after a post-Senate Bill 136 remand, and the defendant is convicted at trial. Whether the . . . court could [then] sentence [the defendant] to a term in excess of the originally agreed upon sentence, and what circumstances might affect that determination, are questions well beyond the scope of the present appeal.' " (*Griffin, supra*, 57 Cal.App.5th at p. 1097, fn. 6, review granted; see also *Ruggerio, supra,* 65 Cal.App.5th at pp. 1129-1130, fn. 2.)

24

would result in a "bounty in excess of that to which [the defendant] is entitled". (*Collins, supra*, 21 Cal.3d at pp. 211-212, 215.)

It appears, however, that under *Stamps,* the *Collins* remedy does not apply where, as here, the underlying conviction offense remains viable. The *Stamps* court expressly recognized that the status quo ante must be restored when either the prosecution or the trial court withdraws consent to the agreement. (*Stamps, supra*, 9 Cal.5th at pp. 706-707; see also *Barton, supra*, 52 Cal.App.5th at p. 1159.) Putting a defendant in a position where he is exposed to no more time than was received as part of the negotiated resolution does not return the parties to the status quo before the agreement. And even though the *Stamps* court discussed *Collins*, it imposed no sentencing cap on remand and never even mentioned the *Collins* cap.[21] As the *Hernandez* court explained: "*Stamps* did not extend *Collins* to permit such a resolution, and instead held the People could

_____

[21] Not once did the *Stamps* court suggest a sentencing cap is appropriate should the parties be returned to the status quo ante on remand. It did mention *Collins*, but only as follows: "Pursuant to a plea bargain, Collins pled guilty to a single count of oral copulation under former section 288a in exchange for dismissal of 14 other felony counts. Prior to sentencing, the Legislature repealed former section 288a, decriminalizing 'the act of oral copulation between consenting, nonprisoner adults . . . .' [Citation.] *Collins* reasoned the decriminalization of oral copulation applied retroactively under *Estrada* because the conviction was not yet final, and the defendant could not be sentenced for that offense. [Citation.] However, *Collins* concluded the prosecution was entitled on remand to reinstate the dismissed counts because, '[w]hen a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain.' [Citation.] *Collins* reasoned: 'Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain—that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.' " (*Stamps, supra*, 9 Cal.5th at pp. 703-704, quoting *Collins, supra*, 21 Cal.3d at pp. 211, 212-213, 215.)

25

completely withdraw from the plea agreement if the prior serious felony enhancement was dismissed." (*Hernandez, supra*, 55 Cal.App.5th at p. 959, review granted; see also *Griffin*, *supra*, 57 Cal.App.5th at p. 1107 (dis. opn. of Reardon, J.), review granted ["Clearly, the [*Stamps*] court did not contemplate that any sentencing cap would pertain"].)[22] We find *Hernandez* to be persuasive on this point and adopt its approach, but urge that this issue be resolved by our high court along with the other issues discussed herein.[23]

---

[22] The *Stamps* court did allow the defendant to withdraw his request for relief under Senate Bill 1393 if either the prosecution or the court withdrew its consent to the agreement. The court wrote: "[I]t is ultimately defendant's choice whether he wishes to seek relief under Senate Bill 1393. . . . '*Given that defendants in criminal cases presumably obtained some benefit from the plea agreement*, we anticipate that there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination, however, lies in each instance with the defendant.' . . . Now that we have rejected his proposed remedy, defendant's calculus in seeking relief under Senate Bill 1393 may have changed. Defendant should be allowed to make an informed decision whether to seek relief on remand." (*Stamps*, *supra*, 9 Cal.5th at p. 708, italics added.)

[23] Because defendant here has not addressed whether he can withdraw his request for Assembly Bill 1950 relief similar to what the court in *Stamps* allowed to obtain the benefit of his original bargain should either the court or the prosecution indicate an intent to withdraw consent from the plea agreement, we do not address that issue and leave it up to the parties to address it in the trial court on remand. In the meantime, like the dissent in *Griffin*, we encourage our high court to resolve this issue. (*Griffin, supra*, 57 Cal.App.5th at p. 1100 (dis. opn. of Reardon, J.), review granted.) As the dissent in *Griffin* noted, there are numerous considerations related to this issue. (*Id*. at pp. 1100-1107 (dis. opn. of Reardon, J.).) And we see several schools of thought on how the issue can be resolved. One suggests that the original sentence is unauthorized because of the ameliorative amendment and must automatically be corrected, but no sentencing cap need be imposed. Another allows a defendant to maintain the benefit of the original bargain by withdrawing his request for relief under the ameliorative amendment. This school of thought looks to the definition of an unauthorized sentence: "a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the

In addition to *Collins*, the *Griffin* court cited another reason for prohibiting a longer negotiated sentence on remand: a longer sentence would be inconsistent with the legislative intent underlying Senate Bill 136. The *Griffin* court observed that "[t]he purpose of the enactment was to *decrease* the length of sentences imposed on repeat felons by substantially narrowing the scope of application of the prior prison term enhancement. An *increased* sentence due to retroactive application of the enactment would be directly contrary to the result the Legislature intended." (*Griffin*, *supra*, 57 Cal.App.5th at p. 1097, review granted.) But again, the legislative purpose of the sentence reduction in Senate Bill 136 focused on the one-year prison sentence enhancement, not on sentences that remain valid under other provisions.

Moreover, here, the legislative concern relates to people who are placed on probation and thus, the legislative purpose is advanced only *if* a court determines

_____

particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) This definition of unauthorized necessarily looks back to the original imposition of the sentence. Here, defendant's sentence was authorized when it was imposed. And but for his appeal seeking *Estrada* relief, he would still be serving that authorized sentence—at least until the Legislature expressly dictates otherwise. (See fn. 11, *ante*.) Thus, the sentence of a person in defendant's position remains authorized if he wants to preserve the benefit of his original bargain instead of facing increased exposure should the court or prosecution withdraw from the original negotiated agreement. In other words, defendant should be given the same option given to the defendant in *Stamps*—maintaining the benefit of his bargain without exposing himself to increased punishment. Another school of thought allowing the defendant to maintain the benefit of the original bargain recognizes that there is precedent allowing defendants to agree to sentences as part of a plea bargain that would otherwise be unauthorized under the law. In such a situation, the defendant implicitly waives the illegality of his sentence to obtain the benefit of the bargain. (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [acceptance of a plea bargain is an implicit waiver of § 654]; *People v. Couch* (1996) 48 Cal.App.4th 1053, 1057 ["When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain"].) There may be other schools of thought or other ways of looking at this issue. In our view, our high court is best suited to resolve this stalemate.

probation is appropriate. A court's decision related to the appropriateness of probation turns on a number of sentencing considerations, including the length of probation as that bears on the prospect of rehabilitation, the protection of the public relative to the specific defendant before the court and other sentencing alternatives in determining what sentence is in the interests of society.

The *Griffin* court also expressed concern that the risk of increased sentences might discourage defendants from exercising their right to seek relief under Senate Bill 136. (*Griffin*, *supra*, 57 Cal.App.5th at p. 1097, review granted.) But defendants who, in their original agreement, avoided a longer prison sentence related to their conviction offense or additional sentencing exposure related to dismissed charges and enhancements can hardly be heard to complain about this purported chilling effect. The same applies, if not even more so, to defendants originally sentenced to more than two years of probation instead of prison.

Another consideration is in play in the context of an amendment reducing the duration of probation. No sentence cap limited to the total custodial time originally agreed upon like envisioned in *Collins* and *Griffin* can be applied in this situation. Under the *Griffin* approach, the trial court could not impose a local or state prison sentence in an Assembly Bill 1950 case—even if it determines a two-year probation sentence for the defendant is not in the interests of society and a prison sentence is. In other words, defendants seeking relief under Assembly Bill 1950 would have been successful in whittling down the original sentence to which they agreed and would have obtained a bounty in excess of that to which they are entitled. (See *Collins, supra*, 21 Cal.3d at

28

p. 215.)[24]  In the absence of legislative intent to achieve this result, we decline to require it.

## G.  Conclusion

Every day, California trial courts preside over negotiated agreements between the prosecution and defense.  As our high court has noted, trial courts have the duty to make sure the sentence agreed upon furthers "the interests of society" in light of "the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes." (*Stamps, supra*, 9 Cal.5th at p. 706.)  In a resentencing required by an ameliorative change in the law, that responsibility and the court's sentencing discretion is unchanged in the absence of legislative intent indicating the contrary.

## DISPOSITION

The conviction is affirmed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____/s/_____
MURRAY, J.*

I concur:

_____/s/_____
HOCH, J.

---

[24] Here, that bounty is potentially huge given that the parties calculated defendant's maximum sentencing exposure before the *Romero* motion as 23 years two months state prison.

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

RAYE, P.J., Dissenting.


Defendant pleaded no contest to possession of a firearm by a felon and, consistent with his plea agreement, was placed on five years of supervised probation. Following his plea and while his appeal was pending the Legislature in its wisdom amended Penal Code section 1203.1 to change the maximum length of probation for felony cases to two years. (Pen. Code, § 1203.1, subd. (a).) No one disputes that the amendment applies to defendant. The People, however, view the plea agreement as sacrosanct and urge that we remand and provide the prosecution the opportunity to void the agreement. I respectfully dissent.

According to the majority, the trial court cannot unilaterally modify a plea agreement by dismissing portions of the agreed sentence; a modification requires the consent of both parties. This " 'long-standing law' could not be circumvented absent legislative intent to do so." (Maj. Opn, *ante*, at p. 9.)

The majority is correct in its statement of principle. It falters in its application. As the majority correctly understands, "the general rule in California is that the plea agreement will be ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . ." ' [Citation.] That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Doe v. Harris* (2013) 57 Cal.4th 64, 66.)

The question is thus not one of legislative authority but legislative intent. If the Legislature intended the amended law to modify plea agreements, the modification will be given effect, no matter how noble and praiseworthy a particular plea agreement might seem to some.

1

In reaching its conclusion, the majority relies greatly on *People v. Stamps* (2020) 9 Cal.5th 685, 706. The *Stamps* court explained that Proposition 47, "specifically applied to a person 'serving a sentence for a conviction, *whether by trial or plea*,' " and " '[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants.' " (*Stamps, supra*, at p. 703, italics added.) Thus, legislative intent was clearly articulated with respect to Proposition 47. However, nowhere in *Stamps* or in any of the other cases cited by the majority does the Supreme Court articulate a view that an express declaration of intent is a sine qua non for a finding the Legislature intended a legislative amendment to apply to a conviction based on a plea. We know all too well from past experience that the Legislature does not always speak with such clarity.

According to the majority a court lacks "discretion" to modify a plea agreement unless the parties agree to the modification. But the issue here is not purely one of judicial discretion. The power at issue is not the unilateral power of a court to modify a plea agreement but the power of a court to determine that the agreement has been superseded by the Legislature's intent as expressed in a particular legislative enactment. We may disagree with a court's determination of legislative intent but we must recognize what is involved—not a purely discretionary act but a finding of legislative intent anchored in the language of the statute and its policy underpinnings.

Given the general rule in California that the plea agreement will be " ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy" ' " (*Doe v. Harris, supra*, 57 Cal.4th at p. 66) it would seem that the amendment here should presumptively apply to all sentences, whether the product of a litigated outcome or a plea agreement. The majority supposes that the default rule is that any change in the law that alters a provision in a plea agreement renders the agreement subject to renunciation by a party to the agreement. To the contrary, the legislative change applies to the agreement unless it is manifestly at odds with legislative intent.

2

A legislative change that effectively renders a plea agreement illusory, destroying a reasonable bargain reached by the negotiating parties, might compel abrogation of the agreement. We could reasonably find the Legislature did not intend such a drastic result. However, the change here—modifying the duration of probation—is not of that type. The Legislature could reasonably conclude the system-wide benefits of such a change should apply to all sentences though the People partially lose the benefit of their bargain.

Accordingly, I dissent.


                                        /s/
                              RAYE, P. J.


3